number 24 3 8 8 5 USA versus David Johnson in case number 24 3 8 8 6 USA versus David Johnson argument not to see 15 minutes per side mr. stemport you may proceed good morning your honors Steve Vinson for David Johnson I'd like to three minutes for rebuttal if I could thank you I'm gonna start with the introduction of the PowerPoint this is agent Conklin's PowerPoint exhibit 64 a pretty clearly not a rule 1006 summary we included the PowerPoint that was admitted as an appendix in this court actually and if you look at page 5 of that appendix you'll see that no this is this is the PowerPoint that he used during testimony and he's got a PowerPoint you know with different visual representations interpretations of a mass of data that was geolocated right geolocation cell site data and he provides a PowerPoint and I'm in page 5 is a good example he's got a red arrow that indicates where he believes that this cell phone that utilized cell sites was traveling and the top it says you know this cell phone utilized cell sites indicating it traveled northwest from Youngstown Ohio so in in my mind this is not a just a summary right an ordinary 1006 summary is for example in the curly case which I think we cited that was a instance where there was a bunch of mortgage fraud and the government introduced a summary of documents that essentially appear to have enlisted the various different real estate transactions the details of those summary this PowerPoint is an interpretive it's a graphical interpretation it's got arrows on it it's indicating you know the government's theory of not just you know the data itself but how that other data should be interpreted by the jury and again I mean but as a just general matter I don't see any reason why a summary cannot be graphic as opposed to us in words I mean you could have you know bar graphs and you know this kind of graphs that are like bars that go up and down your GDP went up it went down I mean it's a summary of economic activity and it's a fair sign I mean it really boils down to whether whether the graphic itself is misleading in some respect not the fact that it's graphic well so and I guess I'll push back a little bit your honor because so so if I if I think about you know graphics that I've used right in you know I've used timelines for example and the timeline itself with with a witness right the witness is sitting there and you walk them through the timeline on the PowerPoint and the power in the timeline itself is accurate right it has all it has various different dates that actually did happen but it is interpretive right because it only includes certain dates it only includes certain things that I think are important for my case and so that and so there's a difference between using that with a witness and having them walk through it and explain it to the jury and then having that that PowerPoint be admitted into evidence and then sent back to the jury room so that the jury can look at it unlike any other witness right because any other witness they have to rely on the testimony that they heard in court and so they have to rely on their memory whereas with this particular witness they'll be able to just pull out the PowerPoint and say oh yeah that's right this is what they were arguing right and it's not that the timeline in my example is inaccurate it's just that it's a summary that contains my interpretation of how the but in your in your hypothetical you're positing that you've omitted certain facts from the timeline like the defendant you know appeared on the street corner the defendant went home and you missed the part where the defendant shot the victim like you do that part out so okay that's you know it's not inaccurate it's just misleading but I don't what do you think is missing or misleading here it's like these are the places where the robberies took place on this map which is an accurate map what so you're on and again I don't think the point isn't that it's inaccurate or misleading I think it's that it contains the government's interpretation of the case now again there is perfectly fine to have your witness testify to that but it's different to take a PowerPoint and then give that to the jury so they can you know into the evidence into evidence so the jury can look at that in the jury room and of course it seems to have been very important in this particular case because in the first case right the jury it was a hung jury it was a mistrial and one of the things they specifically asked for was judge can you give us that PowerPoint so that we can look at it and so it seems to have been very important and again that makes sense right again if I'm an advocate I would love for my PowerPoints to go back in the jury to have them pour over them right and that's that's what happened here right again there's nothing wrong with the expert testifying to this but the problem is that essentially what's happened is that this is that this court talked about this in scales and even in braid to some extent but what's happening is that the jury is allowed to basically given a quote mini summation of the government's argument with respect to this particular witness and let me ask you this even if your argument is that the evidence was improperly admitted under rule 1006 if the evidence would would have been proper and as secondary evidence summary then there's no error that would be reversible here would it if if if this evidence was was offered and admitted as secondary evidence summary rather than under rule 1006 arguably there are two different ways the evidence could have come in yeah I understand that your honor and in the secondary evidence summary that's mentioned in the bray case that is it seems to be kind of an anomaly in in this circuit because it doesn't really fit in well with any of the evidentiary rules or it also doesn't really fit in with new rule 107 and again 107 was adopted after this trial so I'm not saying that it controls here but it is indicative of the way that these sorts of PowerPoints illustrative aids are supposed to be handled right so the secondary evidence summary and even under bray right the secondary evidence seminar summary number one it's dicta right because in bray they had these three categories and they said well what's what's going on in bray is that there was a proper 1006 summary and so then they said but by the way there's also this third category right it's dicta in and bray but we have a later case that treats braise dictum as that's the curly case right and so is and so I would say that under curly again in curly it seems pretty clear that those were actual 1006 summaries right because that's the case where they had summaries of all these real estate transactions in this in this real estate fraud so again I would argue not quite controlling there but even if secondary evidence summaries that is a real thing the the court in bray says that these summaries are allowed into evidence because in the judgment of the trial court such summaries so accurately and reliably summarize complex or difficult evidence that it can come into evidence now again I would suggest that here the PowerPoints are not summaries right and so I'm not sure exactly what the secondary evidence summary category encompasses but I think that this PowerPoint steps outside of it again because it's interpretive it's not just a summary because you can have a rule 1006 summary that is prepared not quite in accordance with 1006 for example it's not timely given to the defendant for example let me let me ask you this with secondary evidence summaries the actual evidence is admitted in addition to the summary so the jury potentially would have access both to the underlying evidence as well as the summaries was that done here yeah yes so so the the idea under the secondary evidence summary is that you have the underlying evidence admitted and then you have the summary admitted and then there's a given to the jury that's that's basically like look you got to rely on the actual underlying stuff not the summary now here they had the underlying the actual underlying evidence in addition to the summary what what what what error was committed here what because I think the problem is as the government says in its brief the underlying data is quote unintelligible to a jury right because it's just it's basically a mass of geolocation data cell site data and so the jury I mean yeah they can look at it but it can be made intelligible to somebody who is sufficiently knowledgeable right so you can have an expert testify about it exactly well okay but I mean if if that if these you know Venn diagram type things are accurate translations of this data that's unintelligible to lay people what's the harm well because I think you could have a you could have a rule 1006 summary of the cell site geolocation data right you could you could have a list that says you know here are the cell site locations here on this date at this time and then kind of list them that would be a 1006 summary that could be admitted into evidence and the jury could look at that but the graphical interpretation of it is different because again it's got like what you don't like is a translation into plain English so to speak well you know so that people can actually understand what this means but if the translation I mean we're talking about this stuff right that's or am I looking at the wrong yeah so the yes yes like circles that show here's the coverage I thought it was a pie slice for this stuff but anyway that show that he's within the coverage area of the tower that's near the place that's being robbed or whatever right and if if that translation of that kind of data to what that is describing on a map if it's accurate why isn't that just good to you know allow the jury to understand what this data really means well as I indicated you know I think there's a difference between interpretive represent graphical representation as opposed to just a summary right and again it's much more powerful for a jury to have the interpretive statement back in the jury room with them as evidence in the case as opposed to just having query it's it's just a CF kind of deal but you know let's say you had some witness testify in Russian and there's a translation you know that's provided to the jury and it's like oh but you can't take the translation back in the jury room with you just have to bring the Russian back I mean what good is that well again I do think it's I do think it's a little different again on page five of the appendix right there's a red arrow that suggests like here's how we're shopping so I do think it's interpretive I do realize I only have a minute left I do want to hit the contempt issue because I because I think it's actually important for this course there's a number of facets to the contempt issue I was wondering if you were going to get to the issue of whether the federal sentence can run consecutive to the state sentence without violating the fifth and eighth amendments yeah I'm happy to address that your honor so so the the issue there of course so the Gonzalez case absolutely says that the the word any as we used in 924 c1 to d2 I think is that means that the that the sentence on those particular counts has to run consecutive to not just a any other federal sentence but also any other state sentence so so as a matter of statutory interpretation that's what Gonzalez held now what Gonzalez did not reach was the constitutional problems with that and your honor might if I could finish my thought here okay thank you your honor what the Gonzales court did not reach is a constitutional problem with this and and again it's it's there was an eighth amendment argument asserted in the district court but again the the basic idea is that there is no non-arbitrary reason for for having the sentence impact turn upon the chronological chronological order of the state sentence versus the federal sentence that's that's our argument in a nutshell and you know again frankly I don't think the Gonzales court addressed that issue and I think it is a I think it is a serious issue especially when you're when you think about the impact that it had in this case right because if my client had been if he had been gone through the federal process before the state process he would not be looking at a sentence that is essentially 40 years on top of whatever he got in a state right you would have a much much different impact rule is violated by this it's so it would be the it'd be the due process clause of the Fifth Amendment and then the Eighth Amendment right because both of those provisions prohibit sentencing based on arbitrary factors and our argument is that the chronological order in which a defendant is sentenced is an arbitrary factor to to to impose a consecutive sentence all right you might want to yes I I wear about your honor thank you so much thank you we'll hear from the government good morning your honors may it place a court Lord Ford on behalf of the United States the 12 pages of maps that were admitted in this case are exactly the type of exhibit that this court in Bray described as secondary evidence summaries that are kind of like this hybrid combination of summaries because it summarizes and was in addition to as Judge Clay noted evidence that was already admitted 777 pages of cell site data that had technical data and abbreviations and were in addition to over a thousand pages that were admitted of Google latitude and longitude data that were in a code like fashion so the nature of this raw voluminous complex data made it very inconvenient for the jury to try to meaningfully examine it without matching maps or descriptive locations and what was provided in the maps centered on the relevant dates and times which were undisputed from the outset of the case in opening statements defense counsel said that they didn't dispute that the robberies occurred on the dates and times their defense was that David Johnson wasn't the person who committed those crimes that was their theory throughout trial and that was that was consistent with their closing argument and by providing these maps that summarize this underlying data in this way it did not make it in unfair or inappropriate graphical interpretation it simply organized and plotted undisputed complex objective data that corresponded to the cell tower and sector locations that were reflected in these records in manners that other courts have upheld the Britain case from 2020 from this court upheld the use of having circles around the cell tower that would show the range certainly in this case I think what's important is that the underlying data itself was not contested there was no argument that it was inaccurate and defense counsel had the opportunity to examine this underlying data that was admitted had the opportunity to examine the summary and claimed in passing that the maps were manipulative of the data but again going back to what was included it was the dates and times that were relevant here and the agent testified about these maps page by page and so the summaries did not inject new facts that were not already reflected by the agents testimony defense counsel was able to cross-examine the agent about this and was pointing out what those exhibits lacked and that was about all the arrows and you know this sort of emphases that your friend talked about today well I don't think there's any emphases there is an arrow that shows that the agent's opinion that he testified to that he believed the phone was traveling but certainly that's that's an objective conclusion by saying okay at one point at this time it was it's a southeast now it's moving and defense counsel was able to challenge that through depicting movement in the general direction it was saying okay it started off here next time it's you know a little further northeast the next point in time it's even farther northeast and so the agent concluded that it was moving in that direction defense counsel was able to cross-examine the agent about that and that alleviates the danger of any inaccuracy or unfair characterization and defense counsel pointed out that the government from from that testimony from these maps couldn't establish who possessed the cell phone or what device was accessing the Google account and in fact these maps were redacted to remove any reference to an unspecified LG device being the type of device that was accessing the Google account so what Johnson arguably could say was prejudice wasn't even there and the combination of that redaction and the cross-examination that would point out that the government's agent wasn't able to specifically pinpoint the precise location within these cell sectors certainly alleviated any danger of unfair characterization in this case and under those circumstances the court properly admit these summaries as under 1006 because of that underlying data was so complex the jury wouldn't have been able to conveniently examine it they'd be flipping through hundreds of pages from two different sources and these maps did it in a reliable way that would materially assist the jury in looking at that data new rule 107 on which was my friend on the other side is acknowledged that wasn't even effective until about 10 months later but certainly even if this case were tried today I don't think the outcome would be any different because 107 D carves out as an exception 106 1006 summaries and says that you admitted under 1006 it's not going to apply so we believe that the summary even if it were tried today wouldn't be precluded by 107 here the court had a limiting instruction that said that this evidence was not independent evidence at PJD 2462 and because it was properly admitted as the Bray court decision points out that it could go back to the jury like any other exhibit judge clay you raised the issue about the sentence running consecutive to the state sentence in this case this case took a while to get to trial because we were just coming out of kovat and judge Polster was not able to try it and gave the defendant the option of having it reassigned to a different judge if you wanted to have a trial in the fall which would have preceded the Lake County trial and the defendant declined that he said no I want to I want to stay with you and we believe the Gonzales case from the Supreme Court is controlling that 924 C does mandate enhanced consecutive penalties regardless of whether it's state or federal and it just recognizes that for 924 C offenses that Congress intended for that to be an enhanced penalty in this case and judge Polster indicates you know because this conduct was so violent he indicates that he probably would have you know he would have imposed the exact same sentence on those for 924 C sentences even if it was not required by the statute you mean he suggests that that is appropriate yes your honor unless this court has further questions the government would respectfully request that this court affirm the district courts judgment and contempt order thank you thank you thank your honors just a few quick points first of all with respect to the PowerPoint I mean clearly the government thought that this was very important that's why they needed it in evidence and we know that from the first jury right the first the first go-around it was not an evidence and the jury specifically wanted it and then it resulted in a mistrial and and then the second time it was admitted and then he was convicted so we know that it was important and we know also know that's important because as the government admits the underlying data itself is unintelligible to the jury and so so I think that's what what the impact of the evidence is notwithstanding you know whether it's reliable or not with respect to the consecutive sentences you know we of course we admit that Gonzales controls the statutory analysis Gonzales did not however reach any sort of constitutional argument right the constitutional argument we're raising here assumes of course that Gonzales is correct with respect to the statutory language and the argument is simply that the statutory language as construed by Gonzales has constitutional problems for people defendants who are in mr. Johnson's position kind of for all like if you commit a lot of crimes it's kind of arbitrary how long it's going to take a state to investigate the crime versus the federal government to investigate the crime so I understand you're in unique circumstances where your defendant was facing federal and state claims at precisely the same time and there's a question about who's gonna try a case first but barring that it be you know the state government this is very quick they've got a lot of money they're not so busy the federal government takes a long time to investigate a crime so that's kind of arbitrary too and we can't look behind all of those I think the question would be you know who has standing to make an argument like this I think my client certainly has standing right because he's uniquely impacted by the way that thing shook out right so the logical disparity here makes has an extra kind of purchase in his particular stances question his standing I just you know if he brought could bring the same argument if he'd just been convicted you know they investigate the first the state investigates first brings its trial first and then he stands before the federal court on a total you know different charges and now he's got the prior convictions and he's like well that's just because you know if you guys had done your investigation more quickly I would have gone to federal trial before I went to state trial I mean yeah and I think the question or I think I think the question is why is that a relevant factor in punishment right and I and I think the argument is as we've made it it's not I mean there's no there's no there's no rational reason there's no non-arbitrary reason wouldn't that require us to look behind all prior convictions and see like well is there a good reason why the state brought its charges before the federal government brought its charges no I think I think the analysis is is there a non-arbitrary reason for 924 C to make the distinction that it does right so I don't think you have to look behind the reason for the prosecution I don't think you have to look like the reason why things went fast in the state versus in the federal system I think the question is is there a non-arbitrary reason for 924 C to make the distinction that it does and I think our argument is that there is no nothing nothing related to you know punishment nothing reasonably related to punishment behind the distinction on 924 C makes between different situations. Well counsel first of all the case is submitted but counsel I understand you were appointed pursuant to the criminal justice act so the court would like to thank you for your service to the court and our system of justice thank you for taking on this case. Thank you very much.